IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-482-FL

| | |
|---|---|
| JENNIFER FIELDS, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| SICKLE CELL DISEASE | ) |
| ASSOCIATION OF AMERICA, INC., a | ) |
| Maryland corporation, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on defendant's motion to dismiss for lack of personal jurisdiction and improper venue (DE 16). Plaintiff responded in opposition to the motion and defendant replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion to dismiss is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this action on September 20, 2017, and filed amended complaint on February 2, 2018. Plaintiff complains of unlawful discrimination in the work place. Specifically, plaintiff asserts the following claims against defendant:

1) Discrimination against plaintiff on the basis of her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 21112(a) ("Count I");

2) Harassment of plaintiff on the basis of her disability, in violation of 42 U.S.C. § 21112(a) ("Count II");

3) Retaliation against plaintiff by defendant on the basis of her disability, in violation of

42 U.S.C. § 12203(a) ("Count III");

4) Discrimination against plaintiff on the basis of her disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("Count IV");

5) Harassment of plaintiff on the basis of her disability, in violation of 29 U.S.C. § 794(a) ("Count V");

6) Retaliation against plaintiff on the basis of a disability in violation of 29 U.S.C. § 791(f) ("Count VI").

Plaintiff seeks back pay plus interest, front pay, compensatory damages, punitive damages, attorney's fees, and costs under the Americans with Disabilities Act and the Rehabilitation Act. Seeking to invoke the jurisdiction of the court, plaintiff alleges "a substantial portion of the employment practices described herein were committed within Wake County, North Carolina" (DE 14 ¶ 3). Plaintiff also asserts that venue is proper.

In its motion to dismiss, defendant seeks dismissal of the present action on the ground that the court lacks personal jurisdiction, and that venue is improper. In support of its argument that it lacks sufficient contacts with North Carolina, defendant relies upon several documents, including:

1) Affidavit of Sonja Banks ("Banks Affidavit") (DE 17-2);

2) Articles of Organization of Jennifer Roman Enterprises ("Articles of Organization") (DE 17-3) and financial documents pertaining to the company (DE 17-6, DE 17-7).

3) May 1, 2015 Independent Contractor Agreement between defendant and Jennifer Roman Enterprises ("First Agreement") (DE 17-4);

4) July 8, 2016 Independent Contractor Agreement between defendant and Jennifer Roman Enterprises ("Second Agreement") (DE 17-5);

5) EEOC Charge of Discrimination filed by plaintiff against defendant (DE 17-8);

6) Selected emails from plaintiff during the course of her employment (DE 17-9).

**STATEMENT OF FACTS**

The facts alleged in the complaint may be summarized as follows.[1] Defendant is a Maryland corporation with its principal place of business in Baltimore, Maryland. In 2015, defendant hired Plaintiff as "Project Director" for a grant awarded to defendant by the United States Health Resources and Services Administration ("HRSA"). (Compl. ¶¶ 17, 19). Plaintiff refused to accept the position with defendant unless she was allowed to work remotely, alleging she had Sickle Cell Disease and could better manage symptoms by working remotely. (Id. ¶¶ 22-24, 29, 31). In order to accommodate plaintiff, defendant required plaintiff to periodically come in to defendant's headquarters in Maryland and otherwise allowed her to telecommute to work. (Id. ¶ 30). This arrangement continued as long as plaintiff worked for defendant. (Id. ¶ 32).

At the outset of her employment, plaintiff worked closely with Sonja Banks ("Banks"), defendant's President, and performed a variety of tasks. (Id. ¶¶ 68-79). However, plaintiff's relationship with Banks became strained after Banks allegedly made several disparaging remarks about individuals with Sickle Cell Disease. (Id. ¶¶ 37-40). Additionally, Banks became aware of negative feedback plaintiff provided in an investigation of Banks by defendant for misconduct. (Id. ¶¶ 47, 50, 51). Plaintiff alleges that following this investigation, Banks took a variety of actions to retaliate, harass, and discriminate against plaintiff using her role as defendant's President. These actions included disparaging comments about plaintiff's appearance, ordering plaintiff to work while she experienced an extended episode of symptoms caused by her disability, demoting her, and

---

[1] Hereinafter, all references to the "complaint" in the text and to "Compl." in citations are to the amended complaint filed February 2, 2018, (DE 14), unless otherwise specified.

ultimately discharging her. (Id. ¶¶ 55, 56-57, 60, 87-88).

Apart from the complaint, the following facts are presented by defendant through uncontroverted affidavit. Plaintiff's relationship with defendant began when she met Banks at a conference in 2011 and subsequently inquired about work with defendant in 2012 and 2013. (Banks Affidavit (DE 17-2), ¶¶ 3-5). Defendant later responded to these inquiries by offering plaintiff a position as Project Manager of the HRSA grant. (Banks Affidavit (DE 17-2) ¶¶ 6-7). As noted above, plaintiff refused the offer until she could work remotely. (Banks Affidavit (DE 17-2) ¶ 7).

On May 1, 2015, defendant entered its First Agreement to employ Jennifer Roman Enterprises, a company formed by plaintiff in Maryland, with its principal place of business in North Carolina.[2] (Banks Affidavit (DE 17-2) ¶ 9); (Articles of Organization (DE 17-3)); (First Agreement (DE 17-4)). The First Agreement required that plaintiff must work five business days per month out of defendant's office in Maryland, but did not otherwise require plaintiff to work in a particular location. ((DE 17-4) ¶ 2). The First Agreement also included a choice of law provision requiring that the contract be governed by the laws of the State of Maryland. ((DE 17-4) ¶ 13). A Second Agreement between Jennifer Roman Enterprises and defendant on July 8, 2016 included the same provisions. ((DE 17-5) ¶¶ 2, 13).

Additional facts pertinent to the instant motions will be discussed in the analysis below.

### COURT'S DISCUSSION

A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the

---

[2]Based on the Articles of Organization, it appears that "Roman" is the middle name of Jennifer Fields, and thus "Jennifer Roman Enterprises" is derived from her first and middle names. (Articles of Organization (DE 17-3) at 1).

4

contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). At this stage, the court "must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993)( "[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

B. Analysis

1. Personal Jurisdiction

"A lawful assertion of personal jurisdiction over a defendant requires satisfying the standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012). Where, as here, "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause, . . . the dual jurisdictional requirements collapse into a single inquiry" into whether personal jurisdiction comports with due process. Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

The due process inquiry "can be undertaken through two different approaches – by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction" based on "continuous and systematic" activities. ALS Scan, Inc. v. Digital Serv. Consul., Inc., 293 F.3d 707, 711 (4th Cir. 2002). Here, plaintiff asserts specific jurisdiction. (Compl. ¶ 3, DE 18 at 2-6).

5

"To decide whether specific jurisdiction exists, we examine (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004) (quotations omitted); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283-84 (2014) (quotations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Id. at 284.

A single contract may demonstrate purposeful availment of plaintiff's forum. Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 190 (4th Cir. 2016). However, to serve as a basis for personal jurisdiction "the continuing obligations" underlying the contract must "strengthen a defendant's contacts with the plaintiff's forum." Id. at 191. Moreover, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Burger King, 471 U.S. at 474 (internal quotation omitted).

Here, defendant's connection to the forum state is not substantial enough to demonstrate purposeful availment. Defendant does not maintain any offices in North Carolina, own or rent any property in North Carolina, or have any employees in North Carolina. (Banks Affidavit (DE 17-2) ¶¶ 19-21). Defendant never held meetings in North Carolina, and no employees traveled to North Carolina to work with plaintiff. (Banks Affidavit (DE 17-2) ¶ 23). Moreover, the alleged actions by defendant occurred in other states, such as the disparaging remarks allegedly made by Banks at

6

the 2015 Sickle Cell National Conference in Maryland, or being ordered to work by Banks while plaintiff was ill on a business trip to Nevada. (Compl. ¶¶ 56-57; Banks Affidavit (DE 17-2) ¶ 24). The only basis that plaintiff relies upon for personal jurisdiction is the First Agreement and Second Agreement between her and defendant, as well as work that plaintiff did pursuant to such agreements.

Plaintiff's contract with defendant fails to create sufficient basis for jurisdiction. As a preliminary matter, both the First Agreement and the Second Agreement between plaintiff and defendant include a provision requiring that the contract be construed according to Maryland law. (First Agreement (DE 17-4) ¶ 13; Second Agreement (DE 17-5) ¶ 13). Additionally, the contract did not make any statement about where defendant required plaintiff to work, except that plaintiff must come to defendant's office in Maryland five business days each month. (First Agreement (DE 17-4) ¶ 2; Second Agreement (DE 17-5) ¶ 2). Additionally, the First Agreement was a short term, independent contractor arrangement to last one year and two months with possible renewal, while the Second Agreement was a month to month contract. (First Agreement (DE 17-4); Second Agreement (DE 17-5)). Unlike the Supreme Court's decision in Burger King, this contract does not involve "a carefully structured [long term] relationship that envisioned continuing and wide-reaching contacts" with plaintiff in North Carolina. 471 U.S. at 480; see Perdue Foods, 814 F.3d at 190.

In addition, the alleged activity in North Carolina is properly characterized as unilateral activity by the plaintiff, rather than acts by the defendant made with the intent to reach North Carolina. Plaintiff alleges that she completed many tasks for defendant while in North Carolina, some of which go beyond the scope of the First Agreement and the Second Agreement. (Compl.

7

¶¶ 68-79). Plaintiff further argues that she was subject to the direction and control of defendant, describing how defendant closely worked with her in completing her tasks. (DE 18 at 5). However, plaintiff's allegations fail to reveal a substantial connection between the defendant and North Carolina. Plaintiff initiated contact with defendant by inquiring about possible employment. (Banks Affidavit (DE 17-2) ¶¶ 4-5). When defendant did extend an offer of employment, plaintiff refused unless she could telecommute from North Carolina. (Compl. ¶ 29). Defendant then accommodated her by only requiring that she come to Maryland five business days per month, but otherwise allowing her to choose where to work. (First Agreement (DE 17-4) ¶ 2; Second Agreement (DE 17-5) ¶ 2).

Plaintiff cites Universal Leather in support of her contention that remotely working for defendant from North Carolina creates a substantial collaboration that is "an integral element of the dispute." Universal Leather, 773 F.3d at 560. Universal Leather cannot be read to support plaintiff's position. Plaintiff's argument for jurisdiction essentially consist of three parts: she was hired by defendant while she was resident in North Carolina, she performed work for defendant remotely in North Carolina, and her employer discharged her on the pretextual basis that they could no longer accommodate her telecommute from North Carolina. (DE 18 at 3-6). Each of these grounds is insufficient to create personal jurisdiction over the defendant.

Plaintiff's first argument that personal jurisdiction was created by defendant hiring her while she was resident in North Carolina does not count as purposeful availment. Both the First Agreement and Second Agreement do not require plaintiff to work in any forum except for Maryland. (First Agreement (DE 17-4) ¶ 2; Second Agreement (DE 17-5) ¶ 2). Moreover, the act of hiring plaintiff is not related to the dispute in question, which concerns acts and omissions by the

8

defendant that occurred during the course of employment. Cf. Ciena Corp. v. Jarrard, 203 F.3d 312, 317-18 (4th Cir. 2000) (finding defendant's acquisition of training and knowledge during trips to company headquarters in Maryland related enough to a noncompetition agreement to create personal jurisdiction).

Likewise, Plaintiff's work in North Carolina and alleged discharge based on the defendant's alleged inability to accommodate her telecommute similarly do not create jurisdiction. In Perdue Foods, the Fourth Circuit found that while a contract may give rise to personal jurisdiction, the contract must create continuing obligations that connect the defendant to the forum state. Perdue Foods, 814 F.3d at 190. The court found that a contract not to conduct business in a forum was insufficient to give rise to personal jurisdiction, contrasting the contract in that case to the one in Burger King, which envisioned an extensive, long term contractual relationship with the defendant. Id. at 191. The court also held that intermittent purchase orders between the two companies were insufficient to create personal jurisdiction. Id.

Plaintiff's transactions with defendant are not perfectly analogous to either Perdue Foods or Burger King, however the facts of this case, taken together, more closely resemble Perdue Foods. Plaintiff's complaint does not allege that any work she completed for defendant was targeted at or involved North Carolina. Additionally, by the terms of plaintiff's contracts, she could telecommute from any location to complete the tasks she described in her complaint. (Compl. ¶¶ 68-79). On the face of her complaint, plaintiff alleges that she chose to stay in North Carolina to manage her disability and also ensure that extended family could care for her son if her symptoms worsened. (Compl. ¶¶ 23-24, 29). Plaintiff's choice to complete her work in North Carolina for her own reasons is a unilateral decision that cannot be fairly attributed to the defendant as an attempt to avail

9

itself of the privileges of conducting business in North Carolina. Similarly, the decision to discharge plaintiff does not demonstrate purposeful availment of the privileges of conducting business in North Carolina. Here, defendant chose to cease conducting business with the plaintiff in North Carolina. See Perdue Foods, 814 F.3d at 191. Considered in context with the other facts discussed above regarding defendant's lack of activity in the forum and the terms of plaintiff's two independent contractor agreements, defendant's decision to discharge plaintiff does not create a substantial connection to North Carolina.

In light of the fact that "the locus of the parties' interaction was overwhelmingly" outside the forum in this matter, Universal Leather, 773 F.3d at 560, and most of the remaining connections to the forum result from the unilateral activity of the plaintiff, Burger King, 471 U.S. at 474, the court finds that defendant has not made a substantial connection to North Carolina, and consequently specific personal jurisdiction is not available. To the extent that plaintiff seeks to recover for injury caused by defendant, her action lies in another forum with jurisdiction over the defendant.

In sum, the court lacks personal jurisdiction over defendant in this case and the complaint must be dismissed. Because the court has not found jurisdiction, it does not reach the alternative ground for dismissal for improper venue.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 16) is GRANTED for lack of personal jurisdiction. The clerk is directed to close the case.

SO ORDERED, this the 26th day of September, 2018.

LOUISE W. FLANAGAN  
United States District Judge